# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  | : |  |
|---|---|---|
| ARY CARREIRA, | : |  |
|  | : | Civil Action No. 13-4630 (SRC) |
| Petitioner, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| SCOTT HASSELL, et al., | : |  |
|  | : | **OPINION** |
| Respondents. | : |  |

**Chesler**, District Judge:

   Petitioner, a native and citizen of Brazil and a removal-period detainee confined at the Essex County Correctional Facility in Newark, New Jersey, submitted a § 2241 petition challenging his detention.[1] See ECF No. 1. After filing the original petition, he also submitted two amended pleadings, see ECF Nos. 4 and 5, and numerous letters, affidavits and declarations, see ECF Nos. 3, 6 and 7. For the reasons detailed below, Petitioner's § 2241 applications will be dismissed. Such dismissal will be without prejudice to raising Petitioner's challenges in a new and separate § 2241 petition if Petitioner's status reverts to that of a pre-removal-period detainee and his claims ripen.

   I.    BACKGROUND

   The statements made in Petitioner's original, first amended and second amended petitions are largely identical. Compare ECF No. 1 to ECF No. 4 to ECF No. 5. Specifically, he asserts that, on October 23, 2006, he was ordered removed by the

---

[1] Petitioner named numerous officials as Respondents. The sole proper respondent is the Warden of the facility where Petitioner is in custody. See Rumsfeld v. Padilla, 542 U.S. 426 (2004); Yi v. Maugans, 24 F.3d 500 (3d Cir. 1994). Accordingly, all officials other than the Warden will be dismissed from this action.

1

immigration judge.  See ECF No. 1, at 5.  On or shortly prior to December 2008, the Board of Immigration Appeals ("BIA") affirmed that order of removal.  See id.  On July 2, 2013, having the conviction underlying his order of removal "down-graded," Petitioner moved the BIA for reopening of his immigration matter.  See id. at 6, 9.  On June 19, 2013, the Government opposed said motion, see id., causing what appears to be its denial.  Thus, on September 19, 2013, Petitioner filed a petition for review with the Third Circuit Court of Appeals.  See Carreira v. Att'y Gen. U.S., USCA No. 13-3826.  There, Petitioner's briefs are scheduled for filing by November 26, 2013, and the Government briefs are scheduled for filing within 30 days from that date.  See id., ECF dated Oct. 17, 2013.  Thus, that matter is in active litigation and, as of now, Petitioner's order of removal remains final.

Meanwhile, acting on Petitioner's order of removal, the Government sought and obtained Petitioner's travel documents from Brazil.  See ECF No. 4, at 2.  He, however, refused to sign those documents, hence preventing his removal.  See id. at 2-3 (indicating Petitioner's belief that, if he signs his travel documents, his removal to Brazil would be effectuated immediately, without waiting for the Court of Appeals' ruling).  In addition, Petitioner commenced the instant matter seeking release from confinement, either outright or on a bond hearing, maintaining that his detention in the hands of immigration authorities was unconstitutional under Demore v. Hyung Joon Kim, 538 U.S. 510 (2003), and Zadvydas v. Davis, 533 U.S. 678 (2001), and requesting stay of his removal.

II.     DISCUSSION

Petitioner's submissions indicate his confusion as to the legal regimes governing pre-removal-period and removal-period detentions.  "The . . . distinction cannot be duly

appreciated without a clarification of what the meaning of the term 'removal period' is, since this term is a legal term of art ensuing from the relevant statutory language." Hany El Sayed v. Holder, No. 11-7324, 2012 U.S. Dist. LEXIS 16808, at *4 (D.N.J. Feb. 9, 2012). The 'removal period' starts on the latest of the following: (a) the date when the order of removal becomes administratively final (that is, appeal to the BIA was either taken and ruled upon, or the time to appeal expired); or (b) if the removal order is judicially reviewed and, in addition, if a circuit court ordered a stay of the removal, then it is the date of the court's final order as to that removal, or (c) if the alien is detained or confined (except under an immigration process), then it is the date when the alien is released from confinement. See 8 U.S.C. § 1231(a)(1)(B). Here, until and unless the Court of Appeals orders stay of Petitioner's removal, he is a removal-period detainee.

Section 1231(a)(1)(A) provides that the government has a 90-day period to remove an alien ordered removed from the United States. Detention during that period is mandatory, see § 1231(a)(2), and, in addition, this 'removal period' shall be extended, and the alien may remain in detention during such extended period, if the alien "acts to prevent the alien's removal [ensuing from his/her] order of removal." 8 U.S.C. § 1231(a)(1)(C); see also Hany El Sayed, 2012 U.S. Dist. LEXIS 16808, at *10, n.6 (quoting Pelich v. INS, 329 F.3d 1057, 1060 (9th Cir. 2003), for the observation that the temporal limitation built into the governing legal regime "does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock"). Since Petitioner conceded that he has been refusing to sign his travel documents, hence obstructing and

3

preventing his removal, his 90-day period is extended by the period of such obstruction and is, therefore, still running. Correspondingly, he failed to state a viable challenge to the delay in his removal process and the required mandatory detention.[2]

In addition to his Zadvydas claim, Petitioner asserts claims based on Demore and § 1226. His reliance on this provision and case law is misplaced. The Demore Court held that the mandatory *pre-removal-period* detention under Section 1226(c) was "constitutionally valid," see 538 U.S. at 523. The Third Circuit has concluded, however, that Due Process "implicitly authorizes detention for [only] a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to . . . ensur[e] that an alien attends removal proceedings." Diop v. ICE/Homeland Sec., 656 F.3d 221, 231 (3d Cir. 2011).

Since Petitioner is a removal-period – rather than a pre-removal-period – alien, Demore and Diop are inapplicable. His Diop claims are and will remain unripe until and

---

[2] In Zadvydas, the Supreme Court held that aliens may be detained under § 1231(a)(6) for "a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Mindful that its holding would lead to difficult judgment calls in the courts, the Supreme Court, "for the sake of uniform administration in the federal courts," recognized a six-month "presumptively reasonable period of detention." Id. at 700-01 (emphasis supplied). However, the Supreme Court stressed, in no ambiguous terms, that even "[a]fter this 6-month period, o[nly if] the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. . . . This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 701. If such determination is made, the appropriate habeas remedy is an outright release, not a bond hearing. See Hany El Sayed, 2012 U.S. Dist. LEXIS 16808, at *8-9, 10 and n.7. Here, Petitioner conceded that his removal would become virtually imminent once he signs his travel documents. Hence, he has no basis to assert that there is no significant likelihood of his removal.

unless the Court of Appeals grants him stay and, in addition, he remains in custody for a period prolonged enough to trigger the Diop considerations.[3]

Finally, his application for stay of removal (on the grounds of the hardship he might experience if removed to Brazil or on the basis of Petitioner's father poor health) falls outside this Court's jurisdiction. Section 1252(g), as amended by the REAL ID Act, Pub L. No. 109-13, 119 Stat. 231 (2005), explicitly bars judicial review by district courts of, inter alia, removal orders. See Chehazeh v. AG of the United States, 666 F.3d 118, 134 (3d Cir. 2012) (relying on Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999)). Since Petitioner already has an action challenging his removal order pending before the Court of Appeals, this Court's construction of his submission as a petition for review of his removal order and a directive to forward it to the Court of Appeals would not be in the interests of justice: it would only create a duplicative matter.

III. CONCLUSION

For these reasons the Petition will be dismissed. An appropriate Order follows.

> s/ Stanley R. Chesler
> **Stanley R. Chesler**
> **United States District Judge**

Dated: November 26, 2013

---

[3] The appropriate habeas remedy to pre-removal-period detainees is a bond hearing before an immigration or district judge, not an outright release. See Harris v. Herrey, No. 13-4365, 2013 U.S. Dist. LEXIS 104841, at *5 n.3 (D.N.J. July 26, 2013) ("A district court's power to entertain habeas applications [of such detainees] allows relief limited to a directive of a bond hearing") (citations, original brackets and ellipses omitted).